## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

DAR THOMPSON,                       )
                                    )
      Plaintiff,                    )
                                    )
vs.                                 )     Civil Action No.: 3:17-cv-00146-TCB
                                    )
JOHN DOES 1-5,                      )
                                    )
      Defendants.                   )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JOHN DOES' MOTION TO DISMISS

Defendants John Does ("Defendants" or "The Doe Defendants") filed their Motion to Dismiss and hereby allege that the Second Amended Complaint [DE 28] of Plaintiff Dar Thompson ("Thompson") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants file this Memorandum of Law in support of Defendants John Does' Motion to Dismiss and show that, for reasons set forth below, Thompson's complaint should be dismissed in its entirety.

## <u>INTRODUCTION</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure recognizes that a party must allege facts that are sufficient to state a plausible claim for relief. Thompson, through his initial Complaint, First Amended Complaint, and now his Second

Amended Complaint has failed to put forth facts that are sufficient to plausibly state a claim for relief under the Anticybersquatting Consumer Privacy Act ("ACPA"). Further, based on those facts that Thompson has pleaded, there is <u>no</u> possible set of facts upon which this count could provide any requested relief.

Despite this Court's repeated allowance of Thompson to amend the Complaint in this matter, Thompson is still unable to show any legitimate claim based on his recently filed Second Amended Complaint. As this Court has continuously stated, to establish a prima facie claim under the ACPA, Thompson must demonstrate that (1) The Doe Defendants have registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a mark owned by Thompson; (3) the mark was distinctive at the time Doe Defendants registered the domain name; and (4) the Doe Defendants committed the alleged infringement with a bad-faith intent to profit from Thompson's mark. Even after Thompson's repeated attempts to cure the deficiencies of his pleadings, the Second Amended Complaint still fails to show that Thompson owned a mark at any time relevant to The Doe Defendant's alleged actions, and even if Thompson did own the mark at the time of registration, it was not distinctive at that time. As such, the Court must grant this Motion to Dismiss.

## PROCEDURAL HISTORY

On October 11, 2017, Thompson initiated the present action with his Complaint alleging a violation of the ACPA under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).  Without this Court's leave, Thompson served and refused to retract a premature and defective *subpoena deuces tecum* on Internet domain name registar GoDaddy.com, seeking to unveil the identity of the registrant(s) of the domain name www.dar4ptc.com (the "GoDaddy Subpoena").

The Doe Defendants appeared on November 3, 2017 by filing a Motion for Extension of Time to File Motion to Quash Subpoena [DE 5].  On November 17, 2017, the Doe Defendants filed that Motion to Quash Third Party Subpoena [DE 9], and this Court granted that motion on February 8, 2018 [DE 16].  This Court also stated in that Order that Thompson "has not demonstrated that he owns an ACPA-protectable mark" [DE 16, Pg. 9].  Thompson then filed his First Amended Complaint on February 22, 2018 [DE 17], and on March 1, 2018, Thompson filed a Renewed Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(F) Conference [DE 18].  This Court denied that motion on May 8, 2018 stating again, "Thompson has not shown any use of "dar4ptc" among the public in a way that particularly identifies that mark with his goods, i.e., his political campaign" [DE 20, Pg. 9].

After this Court entered an order denying the above-mentioned motion, Thompson filed a Motion for Leave to Amend Complaint with a draft of a Second Complaint on May 24, 2018 [DE 22].  The Doe Defendants opposed the Plaintiff's Motion for Leave to File Second Amended Complaint and also filed a Motion to Dismiss the First Amended Complaint on May 31, 2018 [DE 24].  The Court granted Leave to File a Second Amended Complaint on November 1, 2018 [DE 27].  That same day, Thompson filed the Second Amended Complaint for which this Motion to Dismiss relies [DE 28].

## BACKGROUND

Thompson attempted to run for the office of Mayor of Peachtree City, Georgia during the election cycle of 2017.  See Second Amended Complaint [DE 28], ¶ 5.  At an unspecified time in June 2017, Thompson and his advisors narrowed down a list of slogans or phrases to use in the upcoming campaign to (1) dar4ptc or (2) darforptc.  *Id.* at ¶ 6.  On an unspecified date in July 2017, Thompson made the decision to use "dar4ptc" as his slogan or phrase to be used with his upcoming campaign.  *Id.* at ¶ 9.  Thompson concedes that "dar" is a nickname commonly used to refer to him, although it is not his actual name.  *Id.* at ¶ 22.  Additionally, Thompson concedes that PTC is a "commonly used identifier for Peachtree City, Georgia."  *Id.* at ¶ 28.  More importantly, Thompson concedes

that the Peachtree City community was the "entire community for which the mark dar4ptc was intended to be used." *Id.* at ¶ 31.

On July 13, 2017, an internal e-mail was sent to Thompson's campaign volunteers regarding the decision to use "dar4ptc" as the phrase or slogan for his campaign. *Id.* at ¶ 33. On July 15, 2017, the Doe Defendants registered the domain name dar4ptc.com with GoDaddy. *Id.* at ¶ 34. On September 5, 2017, almost two (2) months after the internal e-mail to campaign volunteers and the subsequent purchase of dar4ptc.com, Thompson announced his campaign for mayor of Peachtree City in a "Letters to the Editor" of "The Citizen" newspaper in its print and online editions. See Second Amended Complaint [DE 28] at Exhibit 2 and Exhibit A, Declaration of Kelly O. Wallace ("Wallace Dec.") at Sub-Exhibit 1. Thompson does not use the slogan/phrase "dar4ptc" anytime in the announcement. *Id.* Thompson included this announcement with his Draft of the Second Amended Complaint as an Exhibit to his May 24, 2018 Leave to Amend Complaint. See Plaintiff's Motion for Leave to Amend Complaint [DE 22] at Exhibit 3. On May 24, 2018, the same day Thompson pleads that he publicly announced his election on September 5, 2017, Thompson states in his Brief Showing Cause that "at the time the domain name was registered [July 15, 2017], Thompson had let it be known to the public that he would be a candidate for the office of mayor of

Peachtree City."  See Brief Showing Cause Why Plaintiff's Claim Should Not be Dismissed [DE 23], pg. 6.  These two statements cannot both be true.

Thompson additionally alleges that "soon after selecting dar4ptc as the mark for his campaign, Plaintiff created a Facebook page utilizing the mark dar4ptc as the use name."  *Id.* at ¶ 10.  Thompson has not, at any time, provided this court with the <u>actual date</u> of the creation of the Facebook page, the date of the first post on the "Dar4PTC" Facebook page, or the date or nature of the first content posted which actually included the term "Dar4PTC."  The Facebook page referenced by plaintiff states that it was "launched in August 2017," and the first content of any sort posted on that page was not made until September 6, 2017, the day after Thompson publicly announced his candidacy for mayor of Peachtree City.  See Wallace Dec. at Sub-Exhibit 2, "About" page of Dar4PTC Facebook page; Exhibit Wallace Dec. at Sub-Exhibit 3, September 6, 2017 posting on Dar4PTC Facebook group.  That original September 6, 2017 posting consists entirely of the same "Letter to the Editor" which had been previously published by The Citizen. Compare Second Amended Complaint [DE 28] at Exhibit 2 and Wallace Dec. at Sub-Exhibit 3.  Apart from the name of the page, the first time that Thompson posted any content to the Facebook page which included the "dar4ptc" term was September 22, 2017. See Wallace Dec. at Sub-Exhibit 4.

Thompson has also alleged that he purchased a number of signs and banners that were placed in Peachtree City, Georgia which advertised his campaign and allegedly used the "dar4ptc" identifier.[1]  *Id.* at ¶ 13.  However, the record submitted by Thompson shows that these signs were not shipped from the manufacturer to Thompson until at least September 2017.  See Second Amended Complaint [DE 28] at Exhibit 1.  Accordingly, these signs could not have been publicly displayed or in use advertising Thompson's campaign before that date. In October of 2017, Thompson commenced this action.

## **LEGAL STANDARD**

Rule 8(a)(2) of the Federal Rules of Civil Procedure states a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Further, Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a claim that fails to state a basis upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

In 2007, the United States Supreme Court replaced the "no set of facts" standard for pleading with the "plausibility standard."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-65 (2007).  The new plausibility standard required a complaint to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  These factual allegations "must be enough to raise a right to

---

[1] Plaintiff has alleged that the signs display the at-issue identifier but has not included a copy of any of the signs as an exhibit. Additionally, the invoice has no mention of "dar4ptc."

relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 555.  A plaintiff's obligation to state and provide grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Id.* at 570.

More importantly, The United States Supreme Court refined the *Twombly* standard by stating that the facial plausibility standard is met only if a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).  Thus, under *Iqbal*, a Rule 12(b)(6) analysis involves a two-prong approach: (1) identifying the factual allegations entitled to a presumption of truth, and (2) determining whether these allegations plausibly give rise to an entitlement to relief.  *Id.* at 680.  Thompson has alleged true facts but has failed to provide the critical dates and times relevant to his claims.  As is set forth herein, once those dates are properly associated with his claims, there is no plausible set of facts and no reasonable inference which the Court could draw which could entitle him to any relief.  See Exhibit B for a demonstrative timeline of all dates.  As is shown below, Thompson fails to state any facts under the plausibility standard for which relief can be granted, and therefore, Thompson's complaint must be dismissed.

## ARGUMENT

To establish a prima facie claim under the ACPA, Thompson must demonstrate that (1) the Doe Defendants have registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a mark owned by Thompson; (3) the mark was distinctive at the time the Doe Defendants registered the domain name; and (4) the Doe Defendants committed the alleged infringement with a bad-faith intent to profit from Thompson's mark. *Direct Niche, LLC v. Via Varejo, S/A*, No. 15-cv-62344-GAYLES, 2017 WL 5952896, at *5 (S.D. Fla. Aug. 10, 2017); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:50 (5th ed. Nov. 2018 update). The Doe Defendants contend, as is shown below, that Thompson has not pleaded any facts for which this Court can find that, at the time the Doe Defendants registered the domain, Thompson owned the "dar4ptc" mark or, in the event that Thompson did own a mark, that the "dar4ptc" mark was distinctive at that time. Therefore, this Court is unable to grant Thompson any relief, and Defendant's Motion to Dismiss must be granted.

## I.  THIS MOTION SHOULD BE GRANTED BECAUSE THOMPSON'S SECOND AMENDED COMPLAINT FAILS TO STATE ANY FACTS FOR WHICH THOMPSON COULD SHOW OWNERSHIP OF A MARK.

The ACPA requires that a plaintiff plead and prove ownership of a valid trademark to state a claim. *See* 15 U.S.C. § 1125(d)(1)(a). Under the Lanham Act, a trademark is defined as "any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods, including a unique product from those manufactured or sold by others and to indicate the source of goods, even if that source is unknown." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004) *citing* 15 U.S.C. § 1127. Thompson has not stated any facts that he owned a registered mark in "dar4ptc," or even attempted to register the "dar4ptc" phrase or slogan, however, "a trademark need not be registered to be entitled to protection under the ACPA." *Id. citing Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). It has been noted that the ACPA does not require the mark to be registered, but that unregistered common-law marks are protected by the Act. *Matal v. Tam*, 137 S. Ct. 1744, 1753, 198 L. Ed. 2d 366 (2017). However, Thompson still fails to show that he has any interest in a common-law mark that is subject to ACPA protection.

Congress enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193, 105 S. Ct. 658, 661, 83 L. Ed.

2d 582 (1985) *citing* S.Rep. No. 1333, 79th Cong., 2d Sess., 5 (1946).  Although

Congress has express power under the Constitution to enact patent and copyright

laws, Congress may only use its general powers to regulate interstate and foreign

commerce in order to enact or regulate trademark laws.  *Fila Sport, S.p.A. v.*

*Diadora Am., Inc.*, 141 F.R.D. 74, 79 (N.D. Ill. 1991).  The Supreme Court of the

United States cautioned in the earliest trademark cases that Congress should only

create a trademark law that would fall within the ambit of the power provided

under the Commerce Clause – being commerce between foreign nations or

between two states*.  In re Trade-Mark Cases*, 100 U.S. 82, 96 (1879).  When the

Lanham Act defined "commerce," Congress correctly wrote, "all commerce which

may lawfully be regulated by Congress."  15 U.S.C. § 1127.

In the modern era, the Commerce Clause has been interpreted as relating to

anything that "has a substantial effect on interstate commerce."  *Wickard v.*

*Filburn*, 317 U.S. 111, 125, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (holding that a

farmer who grew wheat for commercial and personal use on his own farm was

subject to a federal quota on the amount of wheat farmers could harvest because

his wholly local harvesting in the aggregate effects interstate commerce).

Recently, the Supreme Court affirmed the *Wickard* precedent by stating that a

single individual who grew marijuana on her property solely for personal, medical

use was subject to federal drug laws since the statute's application to a single

individual was a valid exercise of the Commerce Clause because case law "firmly establishes Congress's power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 6–8, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).

Certain cases have touched on the subject of the limits of the Commerce Clause in relation to trademark law. *Larry Harmon Pictures Corp. v. Williams Rest. Corp.*, 929 F.2d 662, 663 (Fed. Cir. 1991) (holding the Lanham Act's use in commerce provision to be satisfied by a single-location restaurant that serviced a minimal number of interstate travelers); *Application of Silenus Wines, Inc.*, 557 F.2d 806, 807 (C.C.P.A. 1977) (holding the intrastate sale of imported French wine meets the use in commerce standard under the Lanham Act); *Christian Faith Fellowship Church v. adidas AG*, 841 F.3d 986, 992 (Fed. Cir. 2016) (holding that the sale of two (2) hats to an out-of-state resident is able to be regulated by Congress under the Lanham Act's use in commerce language).  The implication of these cases must be read into the limits on Congress's power to regulate common-law trademarks under the ACPA.

None of those above-mentioned cases deal with or relate to the claimed ownership right in a mark that uniquely identifies neither a good nor a service, but a purely local mayoral campaign.  Moreover, Thompson, the purported owner,

concedes and admits that the slogan or phrase was limited to "the Peachtree City community, which is the entire community for which the domain 'dar4ptc.com' was intended to be used."  See Second Amended Complaint [DE 28], ¶ 31.  Even if we view the "good" as Thompson's bid for mayor, a vote in his favor akin to a "sale," and the "market" as the electorate, the slogan was and only could be used locally in Peachtree City, Georgia with no impact or effect on interstate commerce.

First, in order to vote, one had to be a resident of Peachtree City, Georgia. Thus, the slogan was not even meant for use in "intercity," "intertown," or "intrastate" commerce.  Second, even if by the remotest of chances a person outside of Peachtree City, Georgia was interested in the mayoral campaign or candidacy of Thompson, they did not have the privilege or right to vote in the election, therefore no substantial effect on interstate commerce can be found. Lastly, since mayoral elections in Peachtree City, Georgia are nonpartisan, there can be no effect on the political climate of Georgia or the United States as no candidate runs on the platform of a political party.  As such, the slogan "dar4ptc" is not subject to any protection as a common-law mark under the ACPA because it is not what was intended for Congress to protect under the Commerce Clause. Therefore, Thompson is unable to meet the threshold element of mark ownership under the ACPA, and as a result, his Second Amended Complaint must be dismissed.

## II.   THIS MOTION SHOULD BE GRANTED BECAUSE THOMPSON'S SECOND AMENDED COMPLAINT FAILS TO STATE ANY FACTS FOR WHICH THOMPSON COULD SHOW ANY MARK WAS DISTINCTIVE AT THE TIME OF REGISTRATION.

Despite two attempts at amendments, Thompson still cannot show that the "dar4ptc" slogan or phrase had become a mark owned by him or that it had acquired distinctiveness at the time of registration by the Doe Defendants.  No ownership rights exist for common-law marks until they are actually used in commerce, and no mark acquires distinctiveness until it has become associated by the public with a unique source of goods or services.  Thompson fails to show both for "dar4ptc."

1.  Thompson does not plead any facts to show ownership in any mark until September 5, 2017.

Rights in a trademark are determined by the date of the mark's first use in commerce, and that use, not registration, is the foundation of ownership.  *Elastic Wonder, Inc. v. Posey*, 179 F. Supp. 3d 307, 314 (S.D.N.Y. 2016).  Thompson neither pleads that he owns a registered mark in "dar4ptc," nor that he attempted to register that mark.  Rather, Thompson relies on common-law protection to assert his ACPA claim.  Common-law trademark rights are "appropriated only through actual prior use in commerce."  *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643

F.3d 1313, 1321 (11th Cir. 2011) (emphasis added) *quoting Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989).

A two-part test is used to determine whether a party has proved "prior use" to show ownership of a common-law mark: "[E]vidence showing, first, adoption, and, second, use in a way <u>sufficiently public</u> to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Crystal Entm't* 643 F.3d at 1321 (emphasis added) *quoting New Eng. Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir.1951).  Prior use of a word or mark also has no relation to "invention or discovery," therefore the thought or decision to use a word alone does not confer ownership without use in relation to a good or service. *Elastic Wonder,* 179 F.Supp. at 316 (finding that creating a phrase or slogan, registering the phrase or slogan as a domain, and reserving a Facebook page for that phrase or slogan is insufficient to confer ownership rights in that phrase or slogan as a mark because it was not a prior use, but the use of the mark in connection to marketing and advertising clothing on the registered domain is a prior use conferring ownership rights).

In the absence of actual sales, advertising, publicity, and solicitation can sufficiently meet the second prong of the prior use test.  *FN Herstal SA v. Clyde Armor Inc.*, 838 F.3d 1071, 1081 (11th Cir. 2016) (stating the "analogous use doctrine," which refers to promotional efforts such as advertising brochures,

catalogs, newspaper ads, and articles in newspapers trade publications, can

constitute prior use when those activities have a substantial impact on the

purchasing public).  Again, to meet the second prong, the analogous use doctrine

provides the use be "open and notorious" so that the mark is "popularized in the

public mind" and associated with the good or service of the owner.  *Id.*  Lastly,

during the inquiry of prior use the Court is to inquire into the "totality of the

circumstances" surrounding the prior use of the mark to determine whether the

public identified or distinguished the goods or services as being associated to the

mark.  *Id.*

Thompson admits that on July 13, 2017, a wholly <u>internal</u> e-mail was sent to

unspecified campaign volunteers with the statement that "dar4ptc" would be used

as a campaign slogan.  This date does not connotate a prior use, but merely the

intention to adopt a word or phrase as a mark.  Thompson has alleged no facts

associated with this July 13, 2017 date which indicated that he made any public use

of the "dar4ptc" slogan or phrase which would cause it to obtain the status of a

"mark" in relation to his campaign.  As the *Elastic Wonder* case shows, this is

insufficient for ownership of a mark.

On September 5, 2017, Thompson made his first public announcement for

his candidacy.  See Second Amended Complaint [DE 28] at Exhibit 2 and Wallace

Dec. at Sub-Exhibit 1.  While that letter broadcast Thompson's intention to run,

nowhere in the letter, signature, or heading does the slogan or phrase "dar4ptc" appear. Because the public association cannot occur without the use of what Plaintiff purports to be a mark, the analogous use doctrine of *FN Herstal* cannot be applied here. The creation of a phrase or slogan, having a reserved Facebook page, and a registered domain have already been deemed in *Elastic Wonder* to not constitute a prior use, yet, Thompson tries to state that a reserved Facebook page and an internal e-mail alone are sufficient to constitute prior use, which is incorrect.

Thompson's first alleged use of "dar4ptc" to the public occurred in a post on his Facebook page on September 6, 2017, the day after he announced his candidacy in the "Letter to the Editor." See Wallace Dec. at Sub-Exhibit 3. This usage is merely the use of the "Dar4PTC" Facebook page. Thompson does not actually use the phrase or slogan "dar4ptc" anywhere in the content of that post on that date. This again shows that the common-law mark could not be owned until at earliest, September 6, 2017 – the day that Thompson announced his candidacy to the public and used the phrase or slogan in connection to that service. Only at this point does Thompson go beyond what the Court in *Elastic Wonder* held to not be a prior use.

It is important to note that Thompson pleads, "soon after selecting dar4ptc as the mark for his campaign, Plaintiff created a Facebook page utilizing the mark

dar4ptc as the use name." *Id.* at ¶ 10.  Although Thompson does not provide the date for that event, and implies that it was the same day or closely thereafter, it was not until August 2017 that the Facebook page was created.  The best-case scenario that Thompson can argue is that he owned a common-law mark based on the creation of the Facebook page in August of 2017, at least two (2) weeks after The Doe Defendant's registration of the domain.  The realistic date that Thompson can argue that he owns a common-law mark is the day that information was made available about what the term meant or was used in connection with on that Facebook page - September 6, 2017.  Therefore, if Thompson is able to show any common-law trademark ownership, such ownership does not commence until at least September 6, 2017.

   2.  <u>Thompson has pleaded no facts that show his slogan was distinctive at the time of registration of the domain.</u>

Distinctive marks are those that "serve the purpose of identifying the source of the goods or services." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007) *citing Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 705 (1st Cir.2007).  While some marks are inherently distinctive, other marks can acquire distinctiveness by "becoming associated in the minds of the public with the products or services offered by the proprietor of the mark." *Id. citing Two Pesos*, 505 U.S. at 768–69, 112 S.Ct. 2753.  Whether or not a mark is distinctive is a question of fact.  *Id. citing Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931

F.2d 1519, 1523 (11th Cir.1991). However, the facts as alleged by Plaintiff make it factually impossible for the "dar4ptc" phrase or slogan to have acquired distinctiveness on or before it was registered by the Doe Defendants on July 15.

In Trademark law, there are four types of distinctive marks with gradations of strength. *Id.* In descending order of strength, the types of distinctive marks are: fanciful or arbitrary, suggestive, descriptive, and generic. *Id.* An arbitrary or fanciful mark has no logical relationship to the product or service. *Id.* A suggestive mark refers to some characteristic of the goods but requires a leap of the imagination to get from the mark to the product. *Id.* A descriptive mark identifies a characteristic or quality of the service or product. *Id.* Thompson contends that "dar4ptc" is a suggestive mark.

Actions by a mark owner must be significant in the mind of the consumer to attain distinctiveness when the mark is not fanciful. *Id.* at 1525 (finding that there was no significance in a mark holder's use of their mark other than merely displaying its service mark on its transactional documents) *see also ZP No. 314, LLC v. ILM Capital, LLC*, 335 F. Supp. 3d 1242, 1257 (S.D. Ala. 2018) (finding the signing of a management agreement utilizing a phrase, updating the company profile to include the phrase and sending it to twenty-seven (27) vendors, lenders, and realtors, registering a domain name, and creating a twitter page were not significant to create a distinctive mark) *see also Baskin v. Antle*, No. 8:15-CV-22-

T-23EAJ, 2015 WL 4042102, at *2 (M.D. Fla. July 1, 2015) (holding there is no

distinctiveness where no relevant segment of the population would recognize a

phrase as distinguishing goods or services of the purported mark holder from that

of any other). Most importantly, "undisclosed internal" or "secret" uses are

"inadequate to support the denomination 'use'" as it is used in trademark law.

*Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975)[2] (holding

that the internal shipment of slacks containing a phrase to twelve regional sales

managers was insufficient to be a prior use necessary for ownership rights because

they were not public and therefore there was no open use that allowed the relevant

class of purchases to identify goods and distinguish those goods from others).

Dar is a name that Thompson is known by in his community. *Id.* at ¶ 22.

"PTC" is a common acronym for the town of Peachtree City. *Id.* at ¶ 28. The

Court correctly noted that the phrase or slogan does not "specifically identify

Thompson as a candidate for mayor." See Order Granting Plaintiff Dar

Thompson's Motion [DE 22] for Leave to File a Second Amended Complaint and

Defendant John Does' motion [DE 24] to Dismiss [DE 27]. However, in the

following sentence, this Court incorrectly states that "on July 15, 2017 (when the

domain name was registered), Thompson had announced his candidacy for

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (eh banc), the Eleventh
Circuit adopted as binding precedent all Fifth Circuit cases submitted or decided prior to October
1, 1981.

mayor." *Id.* This is directly contradicted by Thompson's own pleading and the exhibits submitted by Thompson. See Second Amended Complaint [DE 28] at Exhibit 2. This Court went on, "Thus, the mark was at least suggestive of him or his campaign when the domain was registered. There would have been public awareness of Thompson and his campaign to make it plausible that people in the relevant 'market' would make the connection between the mark and Thompson and/or his campaign." See Order Granting Plaintiff Dar Thompson's Motion [DE 22] for Leave to File a Second Amended Complaint and Defendant John Does' Motion [DE 24] to Dismiss [DE 27]. The statement that Thompson had already announced his candidacy on July 15 is incorrect causing there to be no set of facts that public awareness was present at that time, and therefore no connection with the "market." As such, Thompson's phrase or slogan was not distinctive at the time of registration.

As explained above, there was no public announcement about Thompson's candidacy until September 5, 2017. See Second Amended Complaint [DE 28] at Exhibit 2 and Wallace Dec. at Sub-Exhibit 1. Therefore, members of the public outside of Thompson's July 13th campaign e-mail thread could not know to associate the "dar4ptc" slogan or phrase with the campaign on July 15, 2017 when the domain was registered. Even if this Court were to accept the creation of a Facebook page as creating sufficient public awareness of Thompson's campaign,

that Facebook page was not created until August of 2017.  See Wallace Dec. at Sub-Exhibit 2.  Therefore, there are <u>absolutely no facts</u> alleged by Thompson that show the phrase or slogan was distinctive on July 15, 2017 because no one in Peachtree City, Georgia outside of Thompson's campaign knew that Thompson was running for mayor.

As such, the phrase or slogan was not distinctive since there was no identification between "dar4ptc" and any good or service provided by Thompson, and no leap of the imagination could have been made to get from "dar4ptc" to Thompson, who had not yet announced his mayoral candidacy.  Thompson pleads one single act: the sending of an <u>internal</u> e-mail to volunteers on July 13, 2017, as sufficient to make the phrase or slogan distinctive.  *Id.* at ¶ 33.  This is far less than what the court deemed <u>not sufficient</u> public, prior use associating a mark with goods in *ZP No. 314*, where the purported mark owners used the phrase or slogan on transactional agreements, set up a twitter profile, and updated the company profile which was later sent to over 20 vendors.  Also, the predecessor to the Eleventh Circuit specifically stated in *Blue Bell* that the type of wholly internal use exhibited by Thompson is insufficient for common-law mark ownership. Thompson is therefore unable to show any facts that would make the slogan or phrase "dar4ptc" distinctive on July 15, 2017.  This Court must dismiss Thompson's Second Amended Complaint because there are no facts for which

Thompson can sufficiently plead the required elements entitling him to relief under an ACPA claim.

## **CONCLUSION**

Under the ACPA, Thompson must demonstrate that (1) the Doe Defendants have registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a mark owned by Thompson; (3) the mark was distinctive at the time the Doe Defendants registered the domain name; and (4) the Doe Defendants committed the alleged infringement with a bad-faith intent to profit from Thompson's mark.  The Federal Rules of Civil Procedure specifically state that Thompson must plead and allege facts in a complaint that make it plausible on its face for him to be entitled to relief under the ACPA based on the facts asserted.  Since Thompson is unable to show that he owned a mark, and in the event he did own a mark, he is unable to show that the mark was distinctive at the time of registration of the domain, Thompson's complaint fails to state any facts that make it plausible on its face for him to be entitled to relief.  Moreover, Thompson has had two (2) attempts to state such facts and still fails because there are no set of facts that will allow him to show the required perquisites for relief under the ACPA.  As such, this Court must dismiss Thompson's Second Amended Complaint.

Respectfully submitted January 8, 2019.

/s/ Kelly O. Wallace

_____

Kelly O. Wallace
Georgia Bar No. 734166
Samuel A. Mullman
Georgia Bar No. 456630
1175 Peachtree St. NE
100 Colony Square, Suite 300
Atlanta, Georgia 30361
Phone: (404) 815-7714
Fax: (404) 815-9957
E-mail: Kelly@wellbornlaw.com
E-mail: Sam@wellbornlaw.com
Counsel for Defendants John Does 1-5

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 5.1

I hereby certify that the Memorandum of Law in Support of Defendant's Motion to Dismiss was prepared in Times New Roman 14-point font, double spaced, with a top margin of not less than 1.5 inches and a left margin of not less that 1 inch.

DATED this 8th day of January, 2019.

/s/ Kelly O. Wallace
_____
Kelly O. Wallace
Georgia Bar No. 734166
Samuel A. Mullman
Georgia Bar No. 456630
1175 Peachtree St. NE
100 Colony Square, Suite 300
Atlanta, Georgia 30361
Phone: (404) 815-7714
Fax: (404) 815-9957
E-mail: Kelly@wellbornlaw.com
E-mail: Sam@wellbornlaw.com
Counsel for Defendants John Does 1-5

25

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the forgoing Memorandum of

Law in Support of Defendant's Motion to Dismiss through the Courts CM/ECF

filing system upon the following:

> Scott David Bennett
> Bennet Law, P.C.
> 390 Racetrack Road
> McDonough, GA 30252
> scottbennettpc@bellsouth.net
>
> Theodore H. Davis, Jr.
> Kilpatrick Townsend &amp; Stockton, LLP
> Suite 2800
> 1100 Peachtree Street, N.E.
> Atlanta, GA 30309-4528
> tdavis@kilpatrickstockton.com

DATED this 8th day of January, 2019.

> /s/ Kelly O. Wallace
>
> _____
> Kelly O. Wallace
> Georgia Bar No. 734166
> Samuel A. Mullman
> Georgia Bar No. 456630
> 1175 Peachtree St. NE
> 100 Colony Square, Suite 300
> Atlanta, Georgia 30361
> Phone: (404) 815-7714
> Fax: (404) 815-9957
> E-mail: Kelly@wellbornlaw.com

E-mail: Sam@wellbornlaw.com
Counsel for Defendants John Does 1-5