IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| Dar Thompson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| vs. | ) | No. 3:17-CV-00146-TCB |
| | ) | |
| John Does 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

### INTRODUCTION

Defendants' Motion to Dismiss Dar Thompson's Second Amended Complaint (Doc. 28), is nothing more than a third bite at the apple. This Court's November 1, 2018, order denied as moot Defendants' Motion to Dismiss Thompson's First Amended Complaint and granted Thompson's opposed Motion to Amend, thus making Thompson's Second Amended Complaint the operative document in this case. While the Court explained that Thompson's First Amended Complaint failed to state a cause of action, it specifically held Thompson's Second Amended Complaint sufficient to survive a motion to dismiss and rejected Defendants' argument that Thompson's proposed amendments were futile. That same order di-

rected Defendants to file a "responsive pleading" within 21 days. (Doc. 27 at 19). Instead, Defendants filed a Motion for Reconsideration on December 7, 2018, which this Court denied on January 10, 2018.

Although the congestion on the docket Defendants have created even before service of the Complaint might suggest this a complicated case, it is not. Thompson created a mark to represent his mayoral campaign, and Defendants copied that mark and registered it as a domain name to prevent Thompson from advertising his campaign. They then attempted to extract money from Thompson by offering to sell the domain name to him for $10,000. Tellingly, Defendants make no challenge to Thompson's assertions they intentionally copied his mark in bad faith. The Court therefore should deny this latest installment of Defendants' abusive motion practice and preclude Defendants from filing a motion for reconsideration, or any further papers intended to impede Thompson's access to discovery, so that this case can move forward in a timely manner.

## I.   DEFENDANTS' MOTION TO DISMISS FAILS PROCEDURALLY

Defendants' second Motion to Dismiss is an untimely waste of judicial resources, and the Court should deny it as procedurally infirm even without considering its myriad substantive infirmities. The Court's November 1, 2018, Order set

forth a clear and unambiguous instruction to Defendants and an equally clear and unambiguous deadline for compliance with that instruction:

> For the foregoing reasons, Thompson's motion [22] to amend is granted, and Does' motion [24] is denied as moot. The Clerk is directed to docket Thompson's proposed second amended complaint [22-1] as the operative pleading in this case. Does are ordered to file a responsive pleading within twenty-one days.

(Doc. 27 at 19). Defendants have ignored this instruction on multiple levels.

### A.    This Court Already Has Held That the Second Amended Complaint States a Claim

The Court set a deadline for a responsive pleading because of its holding that the Second Amended Complaint stated a cause of action. Defendants opposed Thompson's motion for leave to amend his complaint a second time by arguing that the proposed amendment was futile. As the Court properly recognized, Defendants' argument necessarily triggered an inquiry into whether the then-proposed Second Amended Complaint could survive a motion to dismiss:

> *To ascertain whether amendment would be futile, the Court assesses whether the proposed amended complaint would survive a motion to dismiss.* If it would, the Court finds no reason to deny leave to amend. Amendment would render Does' motion to dismiss the first amended complaint moot. Therefore, *the question is whether Thompson's proposed amended pleading states a plausible claim for relief.*

(Doc. 27 at 4-5 (emphasis added)). There is no question that, in equating the two concepts in this manner, the Court followed the proper procedure in this Circuit.

*See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1042 (11th Cir. 1986) ("Our role, therefore, is limited to determining whether the proposed complaint fails to state a claim . . . . If the complaint *does* state such a claim, the [district] court's justification for denying leave to amend fails and the denial becomes improper . . . ."); *Muzzy Prods. Corp. v. Primos, Inc*., No. 4:05-CV-0182-HLM, 2006 WL 8434078, at *4 (N.D. Ga. June 23, 2006) ("In this Circuit, a court may deny a motion for leave to amend based on futility only where the amendment would be subject to dismissal for failure to state a claim.").

There also is no question the Court resolved the inquiry in Thompson's favor, expressly holding in the process that he had sufficiently stated a cause of action:

> [E]ven if Thompson's use of the mark on Facebook is insufficient to show use in commerce, combined with his signage the Court holds that Thompson has alleged a prior use in commerce *sufficient to survive a motion to dismiss.*
>     . . . .
>     . . . Thompson used the mark in commerce in association with his political campaign. Thus, the mark's first use in commerce was by Thompson. Does have shown no other averred uses prior to Thompson's, other than the registration of the domain, which does not count. Therefore, Thompson has priority.
>     . . . .
>     . . . Thompson has alleged facts making it plausible that Defendants had a bad-faith intent to profit.

(Doc. 27 at 4-5, 12-13, 18) (emphasis added).

Indeed, Defendants' motion for reconsideration expressly acknowledged that the Court had reached such a holding. They styled that document as "Doe Defendants' Motion for Reconsideration or, in the Alternative, Motion to Certify the Denial of Defendants' Motion to Dismiss for Interlocutory Appeal." (Doc. 27). Page one of the motion "respectfully request[ed] that the Court reconsider its Order denying Defendants' motion to dismiss Thompson's complaint," and pages two and six recited:

> Defendants respectfully observe that the Court has in its November 1, 2018 opinion erroneously applied 15 U.S.C. [§] 1125(d) as a matter of law and respectfully request that it reconsider its decision consistent with its proper application and grant Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim.
> . . . .
> WHEREFORE, the Doe Defendants respectfully request . . . [t]hat the Court reconsider its denial of the motion to dismiss . . . .

Defendants themselves therefore fully understood the issue resolved by the Court's November 1, 2018, order was the Second Amended Complaint's susceptibility to dismissal for failure to state a claim under Rule 12(b)(6). Any latter-day claim now that that issue remains an open one is wholly disingenuous.

At heart, Defendants' Motion to Dismiss is nothing more than a second motion for reconsideration—once again, Defendants ask this Court to rule on the sufficiency of Thompson's Second Amended Complaint. And, once again, just like Defendants' deficient first motion for reconsideration, Defendants cite to no case

law or reason this Court should waste time considering the same arguments it has already held unpersuasive. *See* LR 7.2E, NDGa. ("Parties and attorneys for the parties shall not file motions to reconsider the court's denial of a prior motion for reconsideration."). To the extent Defendants' motion presents new theories—for example, that their registration of the domain name at issue with an out-of-state registrar was not a transaction in interstate commerce—the time for presenting such theories has long passed.

### B.    Defendants Have Ignored this Court's Order to File and Serve a Responsive Pleading

Defendants filed their latest motion a full 68 days after the Court deemed the Second Amended Complaint "the operative pleading in this case" and ordered a "responsive pleading" within 21 days. Defendants neither sought an extension of this Court's November 22, 2018, deadline nor sought leave to make an untimely filing. Instead, they unilaterally opted out of the Court's Order in favor of filing a wholly unresponsive paper at a deadline of their own choosing. The Court therefore should deny Defendants' most recent motion without consideration of its lack of substantive merit.

Specifically, Defendants have ignored this Court's Order to file a "responsive pleading." Pursuant to Rule 7(a) of the Federal Rules of Civil Procedure, a pleading means "only" a complaint, an answer to a complaint, an answer to a coun-

terclaim, an answer to a cross claim, a third-party complaint, an answer to a third-party complaint, or a reply to an answer upon court order, and nothing more. A pleading differs from a motion, of which a motion to dismiss is one variety. *See* Fed. R. Civ. P. 7. It therefore is the law in this Circuit and all other jurisdictions that "a motion to dismiss is not a responsive pleading." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007); *accord Chilivis v. S.E.C.*, 673 F.2d 1205, 1209 (11th Cir. 1982) ("Neither a motion to dismiss nor a motion for summary judgment constitutes responsive pleadings for purposes of the federal rules."); *Hedzik v. Metro. Atlanta Rapid Transit Auth.*, No. 1:04-CV-2266-MHS, 2005 WL 8154837, at *1 (N.D. Ga. Jan. 6, 2005) ("A motion to dismiss is not a pleading.").

This Court's requirement that Defendants file and serve a *pleading*, and not some other paper of their own choosing, is no accident: To the contrary, it reflects the Court's clear holding, based on extensive briefing by the parties, that the Second Amended Complaint states a claim. Having thus so held, the Court required Defendants to file a responsive pleading, without inviting them to relitigate their objections to Second Amended Complaint by filing some other submission. In trying their luck a third time, Defendants have blatantly ignored this Court's Order, the Local Rules, and the Federal Rules of Civil Procedure, all within a single doc-

ument. Further exacerbating Defendants' inappropriate actions, Defendants have attached to their motion extrinsic evidence not included in Thompson's Second Amended Complaint.[1] For these procedural deficiencies alone, the Court should deny Defendants' present motion.

## II.   DEFENDANTS' MOTION TO DISMISS FAILS ON THE MERITS

### A.   The Rule 12(b)(6) Standard

To the extent the Court ignores the patent untimeliness of Defendants' submission and that submission's failure to constitute the "responsive pleading" required by the Court's deadline, it still should decline Defendants' invitation to revisit its prior holding sustaining the sufficiency of the Second Amended Complaint. In this District:

> A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a 'plausible' claim for relief. A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is 'improbable' that a plaintiff would be

---

[1] Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, if, on a 12(b)(6) motion, matters outside the pleadings are "presented to and not excluded by the court, the motion must be treated as one for summary judgment." As conversion to summary judgment requires both parties to receive an opportunity to supplement the record and would create further docket confusion and delay, Thompson respectfully requests the Court simply exclude any evidence not included in Thompson's Second Amended Complaint. Specifically, Thompson asks the Court exclude the Declaration of Kelly O. Wallace, Exhibit 2 (an alleged copy of the DAR4PTC Facebook page's "about" section), Exhibit 3 (an alleged copy of the DAR4PTC Facebook page's first posting), and Exhibit 4 (an alleged copy of the first posting on the DAR4PTC Facebook page referring to DAR4PTC).

able to prove those facts; even if the possibility of recovery is ex-
tremely 'remote and unlikely.' In ruling on a motion to dismiss, the
court must accept the facts pleaded in the complaint as true and con-
strue them in the light most favorable to the plaintiff.

*Corioliss, Ltd. v. Corioliss USA, Inc.*, No. 1:08-CV-2968-TWT, 2009 WL
2750972, at *2 (N.D. Ga. Aug. 25, 2009) (citations omitted) (denying motion to
dismiss trademark infringement action); *see also Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 556 (2007) ("[O]f course, a well-pleaded complaint may proceed even if
it strikes a savvy judge that actual proof of those facts is improbable, and that a re-
covery is very remote and unlikely.").

Here, Defendants' motion fails to accept Thompson's factual allegations as
true; on the contrary, Defendants improperly invite the Court to reach factual find-
ings inconsistent with those allegations, without the benefit of discovery or a fully
developed record. Because Defendants' motion is therefore fatally inconsistent
with Rule 12(b)(6), it should be denied.

**B.    As This Court Previously Has Held, Thompson's Second Amend-
ed Complaint Sufficiently Avers a Cause of Action for Violation of
the ACPA**

Contrary to Defendants' contention, at the Motion to Dismiss stage,
Thompson need not conclusively "show" anything. To establish a prima facie
claim under the ACPA, Thompson must state facts which plausibly show:
(1) Thompson has a valid and protectable trademark; (2) the mark is distinctive;

(3) Defendants' domain name is confusingly similar to Thompson's mark; and (4) Defendants "used, registered or trafficked in the domain name"; with (5) a "bad faith intent to profit." *See KB Home v. Smith*, No. 8:13-CV-2644-T-27EAJ, 2014 WL 1946622, at *3 (M.D. Fla. May 14, 2014) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)).

As Thompson elaborated in his response to Defendants' Motion for Reconsideration, an offer to sell a domain name "may be sufficient" to establish trafficking, and an "offer to transfer, sell, or otherwise assign the domain name to the mark owner . . . without having used, or having an intent to use, the domain name," is evidence of bad faith. *Id.* at *4 (quoting 15 U.S.C. § 1125(d)(1)(B)(i)(VI)); *see also Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 549 (6th Cir. 2003) (explaining that offering for sale a domain name to the owner of a mark on which the domain name is based is "exactly the wrong Congress intended to remedy when it passed the ACPA").

Here, ignoring (1) the Court's prior holding that the Second Amended Complaint states a claim; and (2) the Court's denial of their motion for reconsideration of that holding, Defendants once again allege that Thompson failed to establish a prima facie case because Thompson failed to "show" he owned the DAR4PTC mark and that the mark was distinctive at the time of registration. Even if the Court

again considers the merits of these recycled arguments despite its earlier holding sustaining the sufficiency of the Second Amended Complaint, it must hold in favor of Thompson. Indeed, Thompson has alleged facts sufficient to satisfy each element of the prima facie case: Thompson has averred he owns a valid trademark entitled to protection; the mark was distinctive at the time of the domain name registration; Defendants' domain name is identical to Thompson's mark; Defendants, by offering to sell the "dar4ptc.com" domain name to Thompson, trafficked in that domain name after Thompson used it in commerce; and Defendants clearly exhibited a bad-faith intent to profit from that trafficking.

This Court not only has already held Thompson stated a proper prima facie case in his Second Amended Complaint, but it has already considered and dismissed the specific arguments Defendants again make regarding mark ownership and distinctiveness. This Court has already held Thompson owns the DAR4PTC mark and that the mark was distinctive at the time Defendants registered it as a domain name; it also has impliedly held that Thompson properly used the mark in interstate commerce. As Defendants only challenge Thompson's prima facie case on the mark ownership and distinctiveness elements, Thompson discusses only those elements below.

### 1.    Thompson's Second Amended Complaint Sufficiently Avers Trademark Ownership for Purposes of an ACPA Claim

As this Court has held after full briefings by the parties in multiple contexts, trademark rights for purposes of a common-law *infringement* action are established in part through prior use in commerce, but the question of prior use is separate from the question of distinctiveness in an action *under the ACPA*:

> It is important not to conflate the "prior use and distinctiveness" elements of the ACPA. The statute does not require use in commerce prior to or at the time of registration; it requires only that the mark be *distinctive* at the time.

(Doc. 27, at 14).

With respect to that distinction, Defendants have labored throughout this litigation under the misimpression that the cause of action upon which Thompson relies is a tort with common-law antecedents. It is not. Although the Lanham Act's cause of action for infringement merely codifies the corresponding cause of action under the common law, Congress acknowledged in passing the Anticybersquatting Consumer Protection Act that "[c]urrent law does not expressly prohibit the act of cybersquatting." S. Rep. No. 106-140, at 7 (1999). "Consistent with their distinct purposes," therefore, "claims under traditional trademark law and the ACPA have distinct elements." *Acad. of Motion Picture Arts & Scis. v. GoDaddy, Inc*., No. CV 10-3738-AB (CWx), 2015 WL 12697732, at *4 (C.D. Cal. Apr. 10, 2015).

The proper disposition of Defendants' latest attempt at obfuscation therefore must rest on the statutory language chosen by Congress, which, in this case provides for liability arising from, *inter alia* (1) the registration of a domain name that, "in the case of a mark *that is distinctive* at the time of registration of the domain name, is identical or confusingly similar to that mark"; and (2) a bad-faith attempt to traffic in that domain name, even if that attempted trafficking occurs later. 15 U.S.C. § 1125(d)(1)(A)(ii)(I). Had Congress intended to require "a mark that is distinctive *and* that is used in commerce at the time of registration of the domain name," it would have done so. It did not, however, and Defendants' persistent focus on a requirement absent from the statute is misplaced. *See generally San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 530 (1987) (holding that trademark disputes are to be governed by the "clear language" of the relevant statute); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (holding that interpretation of Lanham Act "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose").

Moreover, not only did Congress adopt a separate test for protectable rights under the ACPA, it had a perfectly logical reason for doing so. Consider, for example, the following sequence of events:

| January 1, 2019 | Company A applies to register the inherently distinctive YTREWQ.COM as a service mark for the online provision of information on widgets with the U.S. Patent and Trademark Office ("USPTO"). Because Company A does not yet use the mark, the application recites a bona fide intent to use it in the future pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b). |
|---|---|
| January 2, 2019 | Company B, a direct competitor of Company A, sees Company A's application and registers ytrewq.com as a domain name with a bad-faith intent to block Company A's planned use. |

Under Section 7(c) of the Lanham Act, *id.* § 1057(b), Company A could enjoy constructive nationwide priority as of its filing date, but that priority depends on its application maturing into a registration. For that contingency to occur, Company A must file a "statement of use" with the USPTO demonstrating its mark is in use as of the statement's filing. *Id.* § 1051(d). If Company B controls the ytrewq.com domain name, however, Company A will have no practical options for initiating that use—it would make no sense to establish a website under the YTREWQ.COM

14

brand if that site was accessible only at another domain name. The express language of 15 U.S.C. § 1125(d)(1)(A)(ii)(I) precludes such an absurd result; Defendants' proposed departure from that express language would mandate it and allow Company B to escape any consequences of its actions.

Distinctiveness, not distinctiveness and use, therefore is the relevant inquiry under the statute's express text, and this Court's prior holding that "[t]he statute does not require use in commerce prior to or at the time of registration; it requires only that the mark be *distinctive* at the time" therefore is perfectly consistent with that text (*see* Doc. 27 at 14). Moreover, there is no doubt Thompson averred use in commerce of the DAR4PTC mark at the time Defendants *trafficked* in the "dar4ptc.com" domain name by offering to sell it to Thompson for $10,000—which occurred after Thompson established a Facebook page and printed and posted yard signs using his DAR4PTC mark. Defendants allege that the exact date the Facebook page was created or the first content containing DAR4PTC was posted are unknown; that is only more reason why the Court cannot resolve this dispute prior to discovery. Nevertheless, Thompson did specifically aver his purchase and placement of yard signs in September of 2017, before Defendants attempted to exploit their registration of the "dar4ptc.com" domain name. Thompson need not al-

lege in his complaint every relevant fact required to prove his case, but simply must allege enough facts to make out a plausible claim. He has done so here.

Defendants mistakenly allege Thompson has not properly averred prior use of the DAR4PTC mark because he has not pleaded his mark had a substantial effect on interstate commerce. As trademark protection presupposes a nexus with interstate commerce, and this Court already held Thompson properly pleaded ownership and use of a mark, it has impliedly held Thompson's use of his DAR4PTC mark had a substantial effect on interstate commerce. Moreover, Defendants could have alleged Thompson's Second Amended Complaint was deficient in this manner in their opposition to Thompson's motion to amend, but failed to do so.

Nonetheless, Thompson's Second Amended Complaint does properly plead prior mark ownership and effect on interstate commerce. The Lanham Act's "use in commerce" requirement refers to Congress' ability to regulate commerce, and was not meant to limit the Lanham Act to only for-profit activity. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001); *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1376 (N.D. Ga. 2017). The Eleventh Circuit has held that "use in commerce," as it is written in the Lanham Act, must be read in context with Congress' ability under the Commerce Clause to regulate activity that "substantially affects" interstate

commerce; thus, the phrase "use in commerce," and the nexus required between a mark and interstate commerce, are broad in scope. *See* 15 U.S.C. § 1127; *Gulfstream Media Grp., Inc. v. PD Strategic Media, Inc.*, No. 12-62056-CIV, 2013 WL 1891281, at *4 (S.D. Fla. May 6, 2013) (denying motion to dismiss).

Of critical significance, the ability to regulate instrumentalities of interstate commerce and activities substantially affecting interstate commerce includes "all commercial intercourse between different States," and "advertising that affects interstate commerce." *Lancaster v. Bottle Club, LLC*, No. 8:17-CV-634-T-33JSS, 2017 WL 3008434, at *4 (M.D. Fla. July 14, 2017). Defendants' registration of the disputed domain name therefore would have fallen within the scope of the Commerce Clause even had Defendants not transacted with the Arizona-based GoDaddy when registering it:

> "The Internet is an instrumentality and channel of interstate commerce." "No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated." As a designated electronic address on the Internet, a domain name is "part of a system that is inexorably intertwined with interstate commerce and thus properly within the realm of Congress's Commerce Clause power."

*United States v. Adams*, No. 18-CR-86-CJW-MAR, 2019 WL 165720, at *2 (N.D. Iowa Jan. 10, 2019) (quoting *United States v. Havlik*, 710 F.3d 818, 824 (8th Cir. 2013)); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007). The reason for

this rule is apparent: "[A]lthough the domain name in this case may have had a minimal effect on interstate commerce . . . the aggregation of all domain names and their sale and transfer is a national and international market." *Adams*, 2019 WL 165720, at *2. Defendants' conduct therefore falls within Congress' plenary authority under the Commerce Clause, regardless of the scope of any conduct undertaken by Thompson.

Here, Thompson averred he created a Facebook page to advertise his campaign using the DAR4PTC mark soon after choosing it in mid-July of 2017 (Second Amended Complaint ¶ 10). During his campaign, he posted informational videos to his Facebook page, and the page received more than 200,000 views (*Id.* ¶ 11). In holding that the distribution of software over the Internet satisfied the Lanham Act's "in commerce" requirement, the Eleventh Circuit cited to *Planned Parenthood Federation of America, Inc. v. Bucci*, 42 U.S.P.Q.2d 1430, 1434 (S.D.N.Y. 1997), and its holding that establishing an Internet homepage accessible to all end users satisfies the Lanham Act's commerce requirement due to the nature of the Internet. *See Planetary Motion*, 261 F.3d at 1195.

Thus, the Eleventh Circuit has recognized that establishing a homepage accessible across state lines satisfies the Lanham Act's commerce requirement. Here, Thompson has averred that he established a Facebook page using DAR4PTC, and

18

that he posted informational videos to that page—thus, this page functioned as his home page. And, although Thompson hoped to later establish a homepage incorporating the DAR4PTC mark as the domain name, Defendants prevented him from doing so and forced him to continue using the Facebook page as his homepage. The nature of the Internet is such that a homepage, even if only aimed at a subset of the population, is accessible broadly across state lines. The relevant question is whether an activity *affects* interstate commerce, not whether it was *intended* to do so.

Even if, as Defendants argue, only citizens of Peachtree City could vote in the mayoral election, that does not mean those outside of Peachtree City and across state lines had no interest or involvement in the election; those from outside Peachtree City may have contributed to Thompson's campaign, for example. Once again, this is a factual inquiry. Defendants attempt to parse Thompson's Second Amended Complaint and make assumptions, without the benefit of discovery, as to who accessed and interacted with the DAR4PTC Facebook page—these factual inquiries are inappropriate at the motion to dismiss stage.

Defendants themselves cite to numerous cases highlighting the breadth of Congress' plenary authority under the Commerce Clause as it relates to trademark law. For example, Defendants cite to *Christian Faith Fellowship Church v. adidas*

*AG*, 841 F.3d 986 (Fed. Cir. 2016), which, if anything, supports Thompson's argument that the accessibility of Thompson's Facebook page outside of Georgia and the plausible interaction of at least two out-of-state users with that page, affected interstate commerce. The *Christian Faith Fellowship Church* court quoted *Wickard v. Filburn*, 317 U.S. 111, 125 (1942), and explained that:

> [E]ven if . . . activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce and this irrespective of whether such effect is what might at some earlier time have been defined as "direct" or "indirect."

841 F.3d at 991. The court further explained that Congress can regulate purely local activities if they make up a "class of activities" having a substantial effect on interstate commerce. *Id.* Here, the political advertising occurring ahead of the Peachtree City mayoral election is part of a significant class of activities—election advertising—of which Thompson's Facebook page was one small part. There is no doubt that out-of-state residents may have interacted with Thompson's Facebook page, and that page was part of a class of activities, which, taken together, have a substantial effect on interstate commerce; that is all that is needed to satisfy the Lanham Act's commerce requirement as it relates to interstate commerce.

Moreover, as noted above, the Commerce Clause extends to instrumentalities of commerce. Here, there is no question Facebook acted as an instrumentality

of commerce. As this Court explained, Thompson's goods sold under the DAR4PTC mark are votes, and thus the Facebook page served as an instrumentality of commerce to advertise and market Thompson's goods (Doc. 27 at 11-12). The present case also has a nexus to interstate commerce because Thompson averred Defendants registered the "dar4ptc.com" domain name with GoDaddy.com, which has its headquarters in Arizona.

In terms of prior use, as this Court explained, Thompson's use of the mark on his Facebook page and in printing and posting yard signs, all occurred prior to any use by Defendants (Doc. 27 at 16). Indeed, Defendants, unlike Thompson, never used the DAR4PTC mark in commerce in any way because registering the "dar4ptc.com" domain name was not enough to confer rights in the mark. Moreover, Defendants attempted to sell back to Thompson (trafficked) a domain name identical to Thompson's DAR4PTC mark in October of 2017 for $10,000. As explained by that time, Thompson had already established the DAR4PTC Facebook page and printed and posted yard signs throughout Peachtree City. Thus, there is no doubt Thompson averred sufficient facts to establish ownership of a mark for the purposes of the ACPA.

### 2. The Second Amended Complaint Sufficiently Avers Distinctiveness at the Time of the Domain Name's Registration

Just as this Court already has held that Thompson properly has averred ownership of a mark, so too has it already held that Thompson's DAR4PTC mark was distinctive at the time Defendants registered the "dar4ptc.com" domain name. Nonetheless, Defendants again challenge the distinctiveness of Thompson's mark, arguing that the DAR4PTC mark did not acquire distinctiveness before the domain registration. But, as Defendants correctly highlight, distinctiveness is a question of fact. (Motion to Dismiss, Doc. 33 at 18).

"Any given term's correct categorization [on the spectrum of distinctiveness] is a factual issue." *Soweco, Inc. v. Shell Oil Co*., 617 F.2d 1178, 1183 n.12 (5th Cir. 1980); *see also Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984) (existence of acquired distinctiveness is factual issue); *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 477-78 (5th Cir. 1974) (same). For that reason, the fact-intensive question of distinctiveness is inappropriately resolved on a motion to dismiss without the benefit of a fully developed record. *See, e.g., Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 215 (2d Cir. 2003) (reversing grant of motion to dismiss because "[w]hether a composite mark, which must be treated as a whole for classification purposes, is generic presents an issue of fact that cannot be resolved on the pleadings"); *Kuklachev v. Gelfman*, 600

F. Supp. 2d 437, 472 (E.D.N.Y. 2009) (denying motion to dismiss because "[w]hile each of [the] elements [of the plaintiff's trade dress] is not inherently distinctive, together they may create a distinctive whole"); *Through The Country Door Inc. v. J.C. Penny Co.*, 83 U.S.P.Q.2d 1538, 1541 (W.D. Wis. 2007) (denying motion to dismiss because complaint contained "at least an allegation which permits the inference of secondary meaning").

Here, Thompson averred the DAR4PTC mark is inherently distinctive, because at the time of registration, it was a "distinct identifier" for Thompson (Second Amended Complaint ¶ 31). The Court found it plausible that there was public awareness of the Thompson campaign, and that people in the relevant market would make a connection between the DAR4PTC mark and Thompson's campaign at the time the domain name was registered (Doc. 27 at 14). Thus, the mark is suggestive; any challenge to this finding raises a question of fact (*see* Doc. 27 at 14). Defendants allege that no one outside of Thompson's campaign knew that Thompson was running for mayor as of July 15, 2017 (the date of the domain name registration), but Thompson's Second Amended Complaint avers no such thing.

Thompson's Second Amended Complaint only avers that on July 13, 2017, an email was sent to campaign volunteers regarding the use of DAR4PTC. Equally to the point, Defendants themselves obviously were aware of Thompson's cam-

paign and mark at the time they registered a domain name identical to the mark in bad faith: If Defendants wish to inquire further into the awareness of others outside the campaign, they can do so during discovery.

Further, there is no doubt, and Defendants in their present motion to dismiss do not dispute, that they registered a domain name identical to Thompson's mark. Intentional copying, which here Thompson alleges occurred at the moment of the domain name registration, is evidence of secondary meaning. *See CPG Prods. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1012 (Fed. Cir. 1985) (applying Eleventh Circuit law); *Robarb Inc. v. Pool Builders Supply*, 21 U.S.P.Q.2d 1743, 1746 n.5 (N.D. Ga. 1991) ("Evidence of intentional copying is . . . probative [evidence] of secondary meaning."). Thus, even if Thompson's mark was not inherently distinctive at the time it was registered, Thompson averred facts indicating it had acquired secondary meaning by the time of the domain name registration. Without the benefit of discovery, however, it is impossible to know Defendants' state of mind; that is exactly why this issue cannot be resolved on a motion to dismiss, and Defendants' Motion to Dismiss must be denied.

In sum, Defendants have once again filed a meritless motion in the hopes that this Court will change its mind on issues already settled. Defendants refuse to accept and follow this Court's prior holding, instead asking the Court to look be-

yond the pleadings and make factual findings on complex issues without any discovery and a complete record. Defendants' delaying tactics are an attempt to misuse the time and resources of the Court to avoid identification. This Court should not allow Defendants to waste any more time, and should deny the pending Motion to Dismiss and prohibit Defendants from filing any subsequent motion for reconsideration. It is time for this case to move forward.

## CONCLUSION

As this Court correctly noted in making the Second Amended Complaint the operative pleading in this action over Defendants' objections, "the question is whether Thompson's proposed amended pleading states a plausible claim for relief." The Court already has answered that question affirmatively; likewise, it already has rejected Defendants' attempt to relitigate that issue under cover of their motion for reconsideration. The Court therefore should deny Defendants' latest Motion to Dismiss and allow this case to move forward.

Respectfully submitted,

Kilpatrick Townsend & Stockton LLP        /s/ Theodore H. Davis, Jr.
Suite 2800                                Theodore H. Davis Jr.
1100 Peachtree Street                     Ga. Bar No. 212913
Atlanta, GA 30309-4528
404-815-6500 (tel.)                       Attorney for Plaintiff
404-541-3172 (fax)                        Dar Thomson

## **LOCAL RULE 7.1(D) CERTIFICATION**

Counsel for the Plaintiff certifies this document has been prepared with one

of the font and point selections approved by the Court in Local Rule 5.1(C).

/s/ Theodore H. Davis, Jr.
Theodore H. Davis Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

|  |  |  |
|---|---|---|
| Dar Thompson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| vs. | ) | No. 3:17-CV-00146-TCB |
| | ) | |
| John Does 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served the foregoing **Response Brief** through

the Court's CM/ECF filing system upon the following:

Kelly O. Wallace
Samuel Alexander Mullman

Dated January 21, 2019                     /s/ Theodore H. Davis Jr.
                                           Theodore H. Davis Jr.